## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| JEFFREY SCHLOSSER, | : | |
| Plaintiff, | : | No. 3:20-cv-393 (SRU) |
| | : | |
| v. | : | |
| | : | |
| HUBNCHU KWAK, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Jeffrey Schlosser, currently confined at Cheshire Correctional Institution and proceeding *pro se*, filed the instant suit under 42 U.S.C. § 1983.  He filed his original complaint on March 24, 2020, which he thereafter amended on May 4, 2020. [1]  In his amended complaint, Schlosser raises claims for "illegal sentencing, false imprisonment, abuse of process, sexual harassment, sexual abuse, lack of a proper mental health advocate and treatment[,] [t]he smashing of all [his] gabapentin," as well as for the "loss of liberty for no actual real reason" and the "lack of [an] effective defense and a fair judge that acts within their jurisdiction and doesn't violate plea agreements."  Am. Compl., Doc. No. 12, at ¶ 58.  He asserts violations of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, 42 C.F.R. Part 2, Conn. Gen. Stat. Chapter 899, and Title 42 Chapter 114.  *Id*.  Schlosser seeks damages as well as declaratory and injunctive relief.  *Id*. at 25–26.

He names the following twenty-two individuals as defendants: Judge Hunchu Kwak,

---

[1] The amended complaint was filed before an initial review of the original complaint was completed.

Judge Kathleen McNamara, Judge Ann Lynch, Judge Omar Williams, Chief State's Attorney Doe, Deputy Chief State's Attorney Doe, State's Attorney Doe, Assistant Supervisory State's Attorney Adam B. Scott, Prosecuting Attorney David Carlucci, Prosecuting Attorney Sarah Greene, Chief Public Defender Doe, Deputy Chief Public Defender Doe, Assistant Supervisory Public Defender Milton Walsh, Assistant Public Defender Charity Hemmingway, Executive Director CSSD (Court Support Services Division)-Doe, Director Doe CSSD Adult Probation, Deputy Director Doe CSSD Adult Probation, Regional Manager Doe CSSD Adult Probation, Chief Probation Officer Pat Callahan, Chief Probation Officer Jeffrey Mehias, Probation Officer Miriam Mendoza, and Probation Officer Channon Elzia.  Am. Compl., Doc. No. 12.  He sues "[a]ll defendants" in their individual capacity and sues CSSD employees, as well as "CSSD adult probation," in their official capacity.  *Id*. at 1, 11.

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).  Although detailed allegations are not required, the complaint must include enough facts to afford the defendants fair notice of the claims and the grounds upon which they are based.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).  In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Conclusory allegations will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723

F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

## I.      Allegations[2]

In June 2014, four or five months before Schlosser was discharged from custody, he participated in a video conference with a probation officer in Manchester, Connecticut.  Am. Compl., Doc. No. 12, at ¶ 27.  Schlosser informed the officer that he had a serious mental illness and that he wanted to continue his mental health treatment after his discharge.  *See id.*  The officer assured Schlosser that he would be able to do so.  *Id.*  The officer also stated that he had Schlosser's information and that he would forward Schlosser's file to Danbury.  *Id.*

Upon his discharge, Schlosser met with Probation Officer Channon Elzia and notified her of his mental illness.  *Id.* at ¶ 28.  Neither Elzia nor Chief Probation Officer Callahan, however, referred him to the Department of Mental Health and Addiction Services ("DMHAS") for case management or treatment.  *Id.* at ¶¶ 28, 34.

In the late summer or early fall of 2016, Schlosser experienced issues with his medication, Ativan.  *Id.* at ¶ 30.  Although the medication was intended for short-term use, Schlosser had been taking it for two years.  *Id.*  He was becoming used to the medication and began to increase the dosage on his own.  *Id.*  When the medication ran out, Schlosser turned to illegal substances.  *Id.*

Elzia thereafter referred Schlosser for substance abuse treatment.  *Id.*  Schlosser alleges that the program was not helpful and that he was negatively discharged from it for attendance

---

[2] The facts are drawn from the amended complaint, and I assume them to be true and draw all reasonable reference in Schlosser's favor.  *See Ashcroft*, 556 U.S. at 678–79.

issues.  *Id.*

Schlosser then sought treatment at a mental health program.  *Id.* at ¶ 31.  Although the intake person had planned to enroll Schlosser in an outpatient program to taper off the medication and refer him to a mental health provider, Elzia did not allow him to enroll.  *Id.* Schlosser ultimately tapered off the medication on his own and enrolled in a treatment program at Griffin Hospital.  *Id.* at ¶ 32.

On September 29, 2016, Elzia and Callahan prepared a violation of probation warrant affidavit for Schlosser.  *Id.*  Elzia included Schlosser's private health information in the warrant affidavit and named the substance abuse treatment program he attended, thereby making such information public.  *Id.* at ¶ 33.

On October 17, 2016, prosecuting attorney Greene brought to Judge Kwak an application for a warrant based on the violation of probation.  *See id.* at ¶ 36.  Judge Kwak issued the warrant the following day, on October 18, 2016.  *Id.* ¶ 36.  Schlosser thereafter surrendered to the Danbury Police Department and his bond was set at $200,000, an amount higher than the bond for his original crime.  *Id.* at ¶ 37.  Schlosser claims that he was not a flight risk and was in compliance with the registry.  *Id.*

Schlosser was approved for public defender services at state court in Manchester and Hemmingway was assigned as his public defender.  *Id.* at ¶ 38.  Hemmingway did not seek a bond reduction or pursue discovery, nor did she ensure that Schlosser had a mental health advocate.  *Id.* at ¶ 39.  She also did not conduct any investigation or make arguments on the record.  *Id.*  In addition, Schlosser was not informed of his rights and was unaware that, under state law, he was entitled to a hearing within 120 days or else he would be released.  *Id.*

Schlosser pled guilty on April 17, 2017.  *See id.*  Schlosser alleges that he lost all his property, including his apartment and car, as well as one year of his life.  *Id.* at ¶ 40.

Schlosser was discharged from custody on October 20, 2017.  *Id.* at ¶ 41.  Four days later, he was assigned Mendoza as his probation officer, who worked under the supervision of Chief Probation Officer Mehias.  *Id.*  Although Schlosser was supposed to be assigned a mental health probation officer pursuant to his plea agreement, Mendoza was not licensed as such.  *Id.* at ¶ 42.

Mendoza directed Schlosser to Grant Street Partnership, a substance abuse program that provides basic health care services.  *Id.* at ¶ 43.  Schlosser alleges that the staff there was not qualified to treat his mental illness, and that he was not prescribed all the medications that he was taking while in prison.  *Id.*

Schlosser later "fell out" at the police substation in New Haven.  *Id.* at ¶ 44.  He was transported to the hospital by ambulance and placed back on his medications.  *Id.*  The hospital staff made a referral to Yale Behavioral Health, and informed Schlosser that the nurse at Grant Street Partnership was not qualified to prescribe the medication regimen that he was taking.  *Id.* Schlosser therefore stopped participating in Grant Street Partnership and instead completed the program at Yale Behavioral Health.  *Id.* at ¶ 45.  In addition, Mehias enrolled Schlosser in a relapse prevention program, which he also completed.  *Id.* at ¶ 46.

In the spring of 2018, Schlosser told his doctor about memory problems that he was experiencing.  *Id.* at ¶ 47.  Throughout the next several months, Schlosser saw a licensed clinical social worker.  *Id.* at ¶ 48.  He voluntarily underwent drug and alcohol testing each month, and his tests were consistently negative.  *Id.*  Schlosser also complied with the treatment for

continuing care, engaged in cognitive and memory therapy, and participated in a study of veterans with severe PTSD. *Id.*

Mendoza, however, did not believe that such treatment qualified as acceptable mental health treatment, and constantly harassed Schlosser and threatened to report him as in violation of his probation. *See id.* at ¶ 49. Schlosser alleges that, if Mendoza were a licensed mental health probation officer, she would have found his treatment acceptable. *See id.* In addition, Mendoza attempted to send Schlosser to an addiction services program, and they claimed that Schlosser was an "alcoholic" and an "addict" despite his clean breathalyzer and urine tests. *See id.* at ¶ 50.

Schlosser appears to allege that he was then brought to court in Manchester on violation of probation charges and was again represented by Hemmingway. *See id.* at ¶ 51. He did not receive a mental health advocate, and Hemmingway defended him in "grossly ineffective" manner. *Id.* at ¶¶ 51, 53. Hemmingway was removed from the case and Schlosser was appointed a special public defender. *Id.* at ¶ 53. The case was later transferred to Hartford. *See id.*

At the violation hearing, which was before Judge Lynch, the prosecutor, Scott, revealed discovery information. *Id.* Schlosser's attorney requested a continuance, but Judge Lynch denied the request and told Schlosser to either accept the current offer of three years or proceed to trial. *Id.* Although Schlosser accepted the offer, he was later sentenced by Judge Williams to five years. *Id.* Neither Schlosser's attorney nor the prosecutor objected to the sentence. *See id.*

Schlosser further alleges that he was strip searched when he was a pretrial detainee in New Haven County Jail and Hartford County Jail for the violation of probation charges. *See id.*

at ¶ 55.  Schlosser notified Dr. Cruze at Cheshire Correctional Institution of the event but did not receive a response.  *Id.*  Schlosser also elevated the issue to Captain Watson and his clinician, who advised him to file a grievance.  *Id.*

Finally, Schlosser alleges that he is being deprived of medication, and that the nurses at Cheshire Correctional Institution are "maliciously" crushing his medication.  *Id.*

## II.    Analysis

Schlosser advances multiple constitutional and statutory claims against the named defendants, many of which overlap.  I address each claim separately.

### a.   Claims Against Judges

Schlosser names four state judges as defendants.  Judges, however, "generally have absolute immunity from suits for money damages for their judicial actions,' and 'even allegations of bad faith or malice cannot overcome judicial immunity.'"  *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)).  As is the case for other forms of official immunity, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages."  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Judicial immunity applies where the action taken is judicial in nature and the judge "had jurisdiction over the subject matter before him."  *Chris H.*, 764 F. App'x at 55 (quoting *Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2005)).

In the instant complaint, Schlosser appears to challenge the judges' issuance of probation violation warrants, and alleges that the judges presided unfairly over probation violation hearings and related proceedings.  Because those activities were judicial actions performed in the course of judicial proceedings, matters over which the judges had subject matter jurisdiction, the judges

are protected by absolute judicial immunity.  All claims against the judges are therefore

**dismissed with prejudice** under 28 U.S.C. § 1915A(b)(1), (2).  *Jacobs v. Mostow*, 2006 WL

8436107, at *5 (E.D.N.Y. Sept. 22, 2006), *aff'd,* 271 F. App'x 85 (2d Cir. 2008) ("Because the

Court finds that Riegel is absolutely immune from suit, the Court dismisses with prejudice all

claims against Riegel and dismisses Riegel from this action.").

     b.  <u>Claims Against Prosecutors</u>

     Schlosser also names as defendants Chief State's Attorney Doe, Deputy Chief State's

Attorney Doe, State's Attorney Doe, Assistant Supervisory State's Attorney Adam B. Scott,

Prosecuting Attorney David Carlucci, and Prosecuting Attorney Sara Greene, all of whom are

state prosecutors.

     Absolute immunity "attaches to prosecutorial functions that are intimately associated

with initiating or presenting the State's case." *Flagler v. Trainor*, 663 F.3d 543, 546–47 (2d Cir.

2011); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *Imbler v. Pachtman*, 424

U.S. 409, 422–28 (1976).  In his complaint, Schlosser challenges actions directly related to the

prosecution of his violations of probation.  Specifically, the complaint appears to allege that both

Scott and Greene brought applications for a warrant based on Schlosser's probation violations to

judges for their signature.  Am. Compl., Doc. No. 12, at ¶¶ 10, 36.  The complaint further alleges

that Scott revealed discovery information at a violation hearing and that he did not intercede

when Judge Williams sentenced him to five years instead of three.  *See id.* at ¶ 53.

     Because the above actions amounted to "conduct in furtherance of prosecutorial functions

that are intimately associated with initiating or presenting the State's case," *Flagler*, 663 F.3d at

546, the prosecutor defendants are immune from suit.  All the claims against those defendants,

including the claim for abuse of process,[3] are thus **dismissed with prejudice** under 28 U.S.C. §
1915A(b)(1), (2). *Jacobs,* 2006 WL 8436107, at *5.

 c. <u>Claims Against Public Defenders</u>

 Schlosser additionally names as defendants Chief Public Defender Doe, Deputy Chief
Public Defender Doe, Assistant Supervisory Public Defender Milton Walsh, and Assistant Public
Defender Charity Hemmingway, all of whom are public defenders.

 To state a section 1983 claim, Schlosser must establish that his constitutional rights were
violated by a person acting under color of state law. *See Lugar v. Edmondson Oil Co*., 457 U.S.
922, 929, 935–36 (1982). As the Supreme Court instructed, a "public defender does not act
under color of state law when performing a lawyer's traditional functions as counsel to a
defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981).

 Here, Schlosser alleges that Hemmingway, supervised by Walsh, was assigned as his
public defender and represented him in the violation of probation proceedings. *Id.* at ¶¶ 38, 51.
Because the claims against the public defenders appear to arise from Hemmingway's "grossly
ineffective" representation during those proceedings, Schlosser is challenging actions that
Hemmingway took while performing his traditional functions as counsel. There is thus no basis
for the section 1983 claims against him or any other officials in the Office of the Public
Defender. The claims against those defendants are **dismissed with prejudice** under 28 U.S.C. §
1915A(b)(1), (2). *Villegas v. Corr. Med. Servs., Inc.*, 2016 WL 3708218, at *1 (D.N.J. July 12,
2016) (dismissing with prejudice section 1983 claims against entities that did not qualify as
"persons").

---

[3] I construe the claim for abuse of process as being asserted against the prosecutors only.

9

d.  Claims Against CSSD Adult Probation

Schlosser names "CSSD adult probation" as a defendant, which he sues in its official capacity and which is part of the state's judicial branch. *State v. Gaymon*, 96 Conn. App. 244, 250 n.4 (2006) ("[T]he probation process operates as an arm of the judiciary, not of the police or prosecution.") (internal citations omitted).

As noted, to state a claim under section 1983, Schlosser must proffer facts establishing that a person acting under color of state law deprived him of a federally protected right. *Lugar*, 457 U.S. at 929, 935–36.  Schlosser, however, has not put forth any facts to suggest that "CSSD adult probation" is a person for purposes of section 1983. *Zuckerman v. Appellate Div., Second Dep't, Supreme Court of State of N. Y.*, 421 F.2d 625, 626 (2d Cir. 1970) (holding that the Appellate Division of the Supreme Court of New York, as part of the judicial arm of the State of New York, is not a "person" within the meaning of 1983); *Collin*, 2016 WL 6304434, at *2 (holding that the Judicial District of Middlesex is not a person for purposes of section 1983). Accordingly, all claims against "CSSD adult probation" are **dismissed with prejudice** under 28 U.S.C. § 1915A(b)(1), (2). *Villegas, Inc.*, 2016 WL 3708218, at *1.

e.  Challenges to Sentence

Schlosser challenges his sentences arising from his probation violations, including the sentence he currently is serving.  In particular, he argues that the sentencing judge, Judge Williams, did not impose the agreed-upon or an otherwise legal sentence.  Am. Compl., Doc. No. 12, at ¶¶ 53–54.

As a state prisoner seeking relief in federal court, Schlosser can challenge the duration of his confinement only by petition for writ of habeas corpus. *Preisier v. Rodriguez*, 411 U.S. 475,

487–90 (1973) (holding that a state prisoner challenging the length of confinement and requesting immediate release must do so by a habeas petition, not by a section 1983 suit). Accordingly, I do not have the authority to grant the relief that Schlosser seeks. Any challenge to the length of his sentence is thus **dismissed without prejudice** under 28 U.S.C. § 1915A(b)(1). If Schlosser wishes to pursue that claim, he must do so in a state habeas corpus petition.

     f.   <u>Mental Health-Related Claims</u>

     In the complaint, Schlosser asserts that he was deprived of a qualified mental health advocate and of adequate treatment. Am. Compl., Doc. No. 12, at ¶ 58. Schlosser specifically contends that Probation Officers Elzia, Callahan, Mendoza, and Mehias failed to connect him with adequate mental health treatment and, further, that Mendoza was not a qualified mental health probation officer. Because the complaint does not implicate any other individual in the mental health-related claims, I construe the claims as directed only toward Elzia, Callahan, Mendoza, Mehias, and the other probation officials.

     My order of dismissal in *Schlosser v. Elzea*, 2020 WL 887752 (D. Conn. Feb. 24, 2020) ("*Schlosser I*") bars those claims. In *Schlosser I*, Schlosser similarly asserted that the defendants—Elzea,[4] Mendoza, Mehias, and Elzea's CSSD probation officer supervisor, John Doe—failed to provide him with access to appropriate mental health services or with a licensed mental health probation officer while he was on probation. *Id.* at *1, *2. After affording Schlosser an opportunity to amend his complaint, I dismissed the case with prejudice for failure to state a claim. *Id.* at *7.

---

     [4] I assume that the defendant identified as Channon Elzea in *Schlosser I* is the same individual as the defendant identified as Channon Elzia in the instant complaint.

The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were, or could have been, raised in that action. *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000) (internal citation and quotation mark omitted). A district court may raise res judicata *sua sponte. See Rollock v. LaBarbera*, 383 F. App'x 29, 30 (2d Cir. 2010) (summary order).

The doctrine of res judicata will bar a claim from being litigated if three conditions are satisfied: "the previous action was an adjudication on the merit[s], the previous action involved the parties to the current action or those in privity with them, and the claims in the current action were, or could have been raised in the prior action." *Holliday v. Newington Police Dep't*, 2020 WL 509696, at *5 (D. Conn. Jan. 31, 2020) (citing *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001)).

All three factors are satisfied here. First, *Schlosser I* was dismissed for failure to state a claim, and "dismissal for failure to state a claim operates as a final judgment on the merits and thus has *res judicata* effects." *Turner v. Socher*, 2020 WL 704852, at *3 (S.D.N.Y. Feb. 11, 2020) (citations omitted); *see also Orr v. U.S. Air Force*, 2015 WL 6671559, at *5 (N.D.N.Y. Oct. 30, 2015) (dismissing as barred by res judicata claims that had been previously dismissed on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

Second, *Schlosser I* and the present action both name as defendants Elzia, Mendoza, Mehias, and Callahan. Although *Schlosser I* did not explicitly identify Callahan as a defendant, it listed "John Doe" as a defendant and described John Doe as Elzea's supervisor. *Schlosser I*, 2020 WL 887752, at *2. Because the instant complaint identifies Callahan as Elzea's supervisor, it follows that *Schlosser I* involved the parties to the current action.

12

With respect to the remaining CSSD defendants in the instant case, I conclude that privity exists between them and the defendants named in *Schlosser I*. "[T]he principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 148 (D. Conn. 2005), *aff'd sub nom. Tibbetts v. Levin*, 288 F. App'x 743 (2d Cir. 2008) (citations omitted). "A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." *Id*. (citations omitted). As a general matter, "an employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." *Id*. (citations omitted).

Here, the remaining probation defendants—the Executive Director of CSSD, the Director of CSSD Adult Probation, the Deputy Director of CSSD Adult Probation, and the Regional Manager of CSSD Adult Probation—are all described as, in varying capacities, responsible for the operation of the probation office and as employing a supervisory role. Am. Compl., Doc. No. 12, at ¶¶ 17–20. Accordingly, I conclude that those defendants have a "sufficiently close relationship" to the probation officers named in *Schlosser I*. *Tibbetts*, 354 F. Supp. 2d at 148.

Third, the facts and claims asserted in the present case and in *Schlosser I* are virtually identical; both cases concern the alleged failure of the probation officers to connect Schlosser with appropriate mental health services and with a licensed mental health probation officer when he was on probation. Accordingly, the third factor has been satisfied as well.

Because his claims relating to his mental health treatment are barred by claim preclusion, they are **dismissed with prejudice**. *Ritz v. Erie Indem. Co.,* 2019 WL 438086, at *1 (W.D. Pa. Feb. 4, 2019) ("Plaintiff's complaint is dismissed with prejudice because it is barred by claim preclusion").

     g.  <u>False Imprisonment and Loss of Liberty Claims</u>

Schlosser further alleges false imprisonment and loss of liberty. Am. Compl., Doc. No. 12, at ¶ 58. Because the two claims seem to concern Schlosser's time in custody for the violations of probation, and because Schlosser has failed to distinguish the claims, I construe both claims as one for false imprisonment. *McCarthy v. Roosevelt Union Free Sch. Dist.,* 2017 WL 4155334, at *4 (E.D.N.Y. Sept. 19, 2017) (taking a similar approach and construing duplicative claims, including due process and false arrest claims, as one claim for false arrest); *Simon v. City of New York*, 2017 WL 57860, at *5 (S.D.N.Y. Jan. 5, 2017) (dismissing due process claim as duplicative of false arrest claim).

"When evaluating section 1983 claims for false arrest and false imprisonment, the federal court looks to state law." *Torres v. Town of Bristol*, 2015 WL 1442722, at *5 (D. Conn. Mar. 27, 2015). Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Jordan v. Town of Windsor*, 2018 WL 1211202, at *6 (D. Conn. Mar. 8, 2018) (citation omitted).

One element of a false imprisonment claim is favorable termination of the charges for which the plaintiff was arrested. *Torres v. Town of Bristol,* 2015 WL 1442722, at *5 (D. Conn. Mar. 27, 2015); *see also Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (under Connecticut law, "favorable termination is an element of 'a section 1983 claim sounding in false

14

imprisonment or false arrest'") (quoting *Roesch v Otarola*, 980 F.2d 850, 853–54 (2d Cir. 1992)). Courts have concluded that the "favorable termination" element is not met when the individual entered a guilty plea on the charges. *See, e.g., Torres v. Town of Bristol*, 2015 WL 1442722, at *5 (D. Conn. Mar. 27, 2015).

As noted, the false imprisonment claim appears to arise from Schlosser's time in custody for the violation of probation charges. Because Schlosser alleges that he pled guilty to the charges, doc. no. 12, at ¶¶ 39, 53, the charges were not terminated in his favor. Because any amendment would be futile, the false imprisonment claims are **dismissed with prejudice** under 28 U.S.C. § 1915A(b)(1).

### h.  Strip Search and Destruction of Medication Claims

Schlosser further alleges that he was strip searched as a pretrial detainee.[5] *See* Am. Compl., Doc. No. 12, at ¶ 55. In a letter appended to his complaint, he elaborates that he was strip searched by Department of Corrections officers. *Id*. at 28. He also claims that the nurses at Cheshire Correctional Institution maliciously crushed his medication.[6] *Id*. at ¶ 55.

Schlosser does not include any correctional staff as defendants in the case caption and does not name any correctional staff in the body of the complaint. Accordingly, the complaint does not identify an individual who was involved in the challenged conduct. *See* Fed. R. Civ. P 10(a) ("title of the complaint must name all the parties").

---

[5] Because Schlosser claims that a strip search constitutes sexual abuse and harassment under the "Inmate Handbook," doc. no. 12, at ¶ 55, I assume that his sexual abuse and sexual harassment claims are predicated on the strip search allegation.

[6] Because that event appears to have occurred after his conviction, and not when he was a pretrial detainee, I assume that it constitutes the basis of Schlosser's Eighth Amendment claim. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.").

Even if Schlosser had named a responsible party, he or she would have been improperly joined.  Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

"What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis."  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted).  "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims."  *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008).

As the Second Circuit has observed in the Rule 13 context, whether a counterclaim arises out of the same transaction or occurrence as the original claim depends upon the "logical relationship" of the claims, and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

In the case at bar, the complaint centers on Schlosser's time on probation and on the probation violation proceedings—events that are not related to Schlosser's conditions of confinement.  Moreover, I cannot discern from the complaint any common questions of law or fact.  Accordingly, the claims relating to Schlosser's confinement implicate individuals who would have been improperly joined, in violation of Federal Rule of Civil Procedure 20.

16

For those reasons, Schlosser's claims relating to the strip search and to the crushed medication are **dismissed without prejudice** to Schlosser pursuing the claims in a separate action.

      i.   Fourth Amendment Claim

The complaint also asserts that medical information was improperly included in the probation violation warrant affidavits. *See* Am. Compl., Doc. No. 12, at ¶¶ 32–33. To the extent Schlosser challenges that disclosure as violative of the Fourth Amendment, the claim fails.

The Fourth Amendment declares: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures shall not be violated . . . ." U.S. Const. amend. IV. As a general matter, individuals have a Fourth Amendment expectation of privacy only in documents they own or possess. *See United States v. Miller*, 425 U.S. 435, 437–43 (1976) (holding that a depositor did not have a Fourth Amendment interest in bank records).

Relying on *Miller*, the Eastern District of New York held that a parolee has no Fourth Amendment expectation of privacy in medical records that parole officials provided to law enforcement. *Webb v. Goldstein*, 117 F. Supp. 2d 289, 295 (E.D.N.Y. 2000). As in *Webb,* there is no allegation here that the records that might have been disclosed either belonged to Schlosser or were in Schlosser's possession. *Id.* Accordingly, he possessed no Fourth Amendment expectation of privacy in such information.

Even if Schlosser voluntarily provided the medical information to a third party with the expectation that the information would remain confidential, that would not create a Fourth Amendment expectation of privacy. *Miller*, 425 U.S. at 443 ("This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third

party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.").  Therefore, the complaint fails to plead facts to support a colorable Fourth Amendment claim.

Moreover, the probation officers are entitled to absolute immunity for their disclosure of Schlosser's health information in the affidavits, as I discuss further below.  Accordingly, the claim is **dismissed with prejudice** under 28 U.S.C. § 1915A(b)(2).

      j.   <u>Fifth and Sixth Amendment Claims</u>

Schlosser further alleges that the defendants violated his rights under the Fifth and Sixth Amendments.  Schlosser, however, has failed to put forth any facts supporting such claims.

The Due Process Clause of the Fifth Amendment applies to the federal government, whereas the Due Process Clause of the Fourteenth Amendment applies to the states.  *Dusenbery v. United States*, 534 U.S. 161, 167 (2002).  Because no defendant is a federal actor, the Due Process Clause of the Fifth Amendment is not applicable here.  Schlosser's Fifth Amendment due process claim is therefore **dismissed without prejudice**.

The Sixth Amendment affords individuals certain rights during a criminal trial, as opposed to a proceeding for probation and parole revocation.  *See United States v. Ojudun*, 915 F.3d 875, 888 (2d Cir. 2019) ("[T]he Sixth Amendment right of confrontation that is applicable in a criminal trial does not apply in a proceeding for probation revocation, parole revocation, or revocation of supervised release because such a proceeding 'is not a stage of a criminal prosecution'") (citations omitted).  Because Schlosser does not challenge his underlying criminal trial, he has not stated a Sixth Amendment claim and the claim is **dismissed without prejudice**.

18

I note that, to the extent his Sixth Amendment claim—or any of his claims—rest on the allegations that the judges and prosecutors acted unfairly in proceedings, or that his public defender, Hemmingway, provided ineffective representation, those claims cannot survive.  As noted, prosecutors and judges are immune from suit, and Hemmingway does not qualify as a person within the meaning of section 1983.

     k.   Fourteenth Amendment Claim

Schlosser also propounds a Fourteenth Amendment claim.  To the extent Schlosser premises that claim on the inclusion of his health information in the probation of violation warrant affidavits, the claim cannot proceed.

The Second Circuit has recognized a constitutional right to privacy in personal information under the due process clause.  *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994).  That right encompasses a right to confidentiality regarding "information about the state of one's health."  *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63–64 (2d Cir. 2011) (citing *Doe*, 15 F.3d at 267); *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018) ("The Fourteenth Amendment's due process clause thus protects individuals in this circuit from arbitrary intrusions into their medical records.").  The constitutional right to privacy has been extended, to a limited extent, to prisoners.  *Id.* at 64.  Courts consider this protection on a case by case basis.  *Id.* at 64–65.

In this case, Schlosser alleges that Callahan and Elzia prepared a violation of probation warrant affidavit for Schlosser.  Am. Compl., Doc. No. 12, at ¶ 32.  He alleges that Elzia placed his "protected health information" in the affidavit, which made such information public.  *See* Doc. No. 12, at ¶ 33.  He further alleges that Elzia specifically referenced his "substance use" at

a counseling center.  *Id.*  Schlosser elaborates that the "treatment center is a federally assisted

center as they prescribe and use for treatment a drug called methadone."  *Id.*

At least one district court in this circuit has concluded that participation in a drug or

alcohol rehabilitation program constitutes information that implicates a relatively weak privacy

interest.  *Wilson v. Brock*, 2008 WL 4239564, at *5 (N.D.N.Y. Sept. 11, 2008) (holding that

"participation in a [parole-mandated] drug/alcohol rehabilitation center . . . is not the type of

'deeply personal' information that is protected by the Fourteenth Amendment").  Construing the

complaint liberally, however, the interest asserted here is more compelling; Schlosser alleges that

Callahan and Elzia disclosed not only the fact that he was participating in a drug rehabilitation

program, but also the fact that he was using substances of some kind.

Moreover, any privacy interest must be weighed against the government's interest in

disclosing such information.  *Hancock*, 882 F.3d at 68 ("[W]e apply a balancing test to the

government's collection or publication of *all* medical records. . . .The strength of the individual

interest in privacy adjusts how closely we scrutinize the government's offered justifications.").

I need not decide whether Schlosser has stated a plausible due process claim, however,

because Elzia is entitled to absolute immunity as a witness in any event.  Witnesses at trial and

grand jury proceedings enjoy absolute immunity from section 1983 claims based on their

testimony.  *Briscoe v. Lahue*, 460 U.S. 325, 329–36, 341–46 (1983) (addressing trial witnesses);

*Rehberg v. Paul*, 566 U.S. 356, 367–69 (2012) (addressing grand jury witnesses).[7]

---

[7] Of course, absolute immunity does not extend to every single action undertaken by a witness.  The
Supreme Court, for instance, has "afforded only qualified immunity to law enforcement officials who falsify
affidavits . . . and fabricate evidence concerning an unsolved crime."  *Rehberg*, 566 U.S. at 370 n.1 (citing *Kalina v.
Fletcher*, 522 U.S. 118, 129–31 (1997); *Malley v. Briggs*, 475 U.S. 335, 340–45 (1986)).  Because Schlosser does
not allege that the affidavit was falsified or that evidence was fabricated, I conclude that neither exception applies

District courts in this circuit have extended that immunity to government officials'

testimony during probation revocation hearings.  *See, e.g., Johnson v. Kelsh*, 664 F. Supp. 162,

166 (S.D.N.Y. 1987) (holding that an arresting officer's testimony at a probation revocation

hearing was covered by absolute immunity, reasoning that "[s]ubjecting an arresting officer to

damages liability for his testimony in a parole revocation hearing could limit the effective

performance of his public duties and limit his contribution in the revocation determination

proceeding"); *accord Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005) (concluding

that "[a]lthough a parole hearing is not a criminal hearing or grand jury proceeding, we read the

Supreme Court's and our previous cases to imply that parole officers enjoy [absolute quasi-

judicial] immunity for testimony given during parole revocation hearings when they act within

the scope of their duties"); *Weikel v. Vorous*, 2018 WL 3866681, at *4 (D. Del. Aug. 14, 2018)

("To the extent Plaintiff's claims against [the parole officer] stem from her testimony at

Plaintiff's revocation hearing, she is entitled to absolute witness immunity").

Whether that immunity applies to the warrant affidavit process that precedes probation

revocation hearings—the issue now at hand—is not well-settled.   At least one district court in

this circuit has appeared to answer that question in the affirmative.  *See Davis v. New York State

Div. of Parole*, 2008 WL 3891524, at *12 (S.D.N.Y. Aug. 20, 2008) (holding that two parole

---

here.

      I am also aware of at least one court in this circuit that has suggested that absolute witness immunity does not extend to an affiant who is functionally a "complaining witness"—that is, an individual who initiated a criminal prosecution during the period when section 1983's predecessor was enacted.  *See, e.g., M.C. v. Cty. of Westchester, New York*, 2018 WL 1275435, at *6–7 (S.D.N.Y. Mar. 6, 2018).  I respectfully disagree with that reasoning, which, in my view, does not apply the lessons from *Rehberg*.  There, the Supreme Court declared that "testifying, whether before a grand jury or at trial, was not the distinctive function performed by a 'complaining witness.'"  *Rehberg*, 566 U.S. at 371.  The Court continued that "a complaining witness cannot be held liable for perjurious *trial* testimony," and "there is no more reason why a complaining witness should be subject to liability for testimony before a grand jury."  *Id*. (emphasis in original).  Accordingly, even if Elzia did instigate the parole revocation proceeding, I do not believe she could therefore be liable for her testimony.

officers were "entitled to absolute immunity for seeking a parole revocation warrant and for

issuing such a warrant," and that another parole officer was "entitled to absolute immunity in

connection with submitting affidavits . . . and in connection with testifying as a state witness at

the December 9, 2004 fact-finding hearing").

The First Circuit took a different approach in *Krohn v. United States*, holding that *Briscoe*

immunity did not extend to a police officer's warrant affidavit.  742 F.2d 24, 31 (1st Cir. 1984).

In reaching that conclusion, the court reasoned that the warrant affidavit process is

"fundamentally different" because of the "lack of procedural safeguards:"

> The witness immunity discussed in *Briscoe* is afforded to encourage complete disclosure
> in judicial proceedings as a means for ascertaining the truth, and, because of its common
> law roots, is necessarily limited to witnesses in judge-supervised trials. The notion is that
> witnesses should be encouraged to tell all they know without fear of reprisal, and the
> judicial process—rules of evidence, cross-examination, and the factfinder—will be able
> to discern the truth. . . . The warrant affidavit process is fundamentally different. As the
> Court said in *Franks* . . .  "[W]hen the Fourth Amendment demands a factual showing
> sufficient to comprise 'probable cause,' the obvious assumption is that there will be
> a *truthful* showing." This is because unlike the criminal defendant, who enjoys the
> immediate right to set the record straight through cross-examination, or by submitting his
> own evidence, the subject of a warrant must hope that the magistrate can discern
> inconsistencies in the affiant's story at an ex parte hearing. Given this relative lack of
> procedural safeguards, we think it desirable that officers should, in effect, be required to
> think twice about allegations in warrant affidavits.

*Id.*

The First Circuit's reasoning shares similarities with the Second Circuit's analysis in

*Sykes v. James*, 13 F.3d 515 (2d Cir. 1993).  In that case, the Court held that a parole officer was

entitled to absolute immunity from claims based on an affidavit that he filed in opposition to a

parolee's habeas corpus petition.  *Id*. at 521.  Central to the Court's holding was the fact that,

although cross examination was not possible because an affidavit was used, "all the other

protections of the judicial process were afforded" to the parolee.  *Id*.  The Court emphasized that

"the proceeding was adversarial in nature; it was conducted by a judicial officer who rendered

the final decision; and it was subject to judicial review." *Id.*  The Court continued: "the affidavit

oath subjected [the parole officer] to the penalty of perjury if the affidavit were false; [the

parolee] had the opportunity to present affidavits of his own; and testimony could have been

taken if the judge considered it necessary." *Id.*

Although I cannot discern from the complaint which judicial safeguards were present

when Greene brought Elzia's affidavit to Judge Kwak, those facts were not dispositive to the

Supreme Court's more recent decision in *Rehberg*.  In that case, the Court extended absolute

immunity to grand jury witnesses in spite of the fact that certain procedural protections are

unavailable during grand jury proceedings.  Indeed, the Court was unpersuaded by the argument

that "the deterrent effect of civil liability is more needed in the grand jury context because trial

witnesses are exposed to cross-examination, which is designed to expose perjury." *Rehberg*, 566

U.S. at 373.

Writing for a unanimous Court, Justice Alito explained that civil liability as a deterrent

was unnecessary in light of the possibility of criminal liability, and that civil liability could

impede the judiciary's ability to obtain evidence:

> The factors that justify absolute immunity for trial witnesses apply with equal force to
> grand jury witnesses. In both contexts, a witness' fear of retaliatory litigation may deprive
> the tribunal of critical evidence. And in neither context is the deterrent of potential civil
> liability needed to prevent perjurious testimony. . . . Since perjury before a grand jury,
> like perjury at trial, is a serious criminal offense, *see, e.g.,* 18 U.S.C. § 1623(a), there is
> no reason to think that this deterrent is any less effective in preventing false grand jury
> testimony.

*Id*. at 367.

23

I believe both reasons apply here with equal force.  Connecticut law criminalizes perjury in official proceedings as a Class D felony.  Conn. Gen. Stat. § 53a-156.  Moreover, a probation officer's fear of retaliation could dissuade him or her from providing courts with critical information about the individuals under their supervision, which, in turn, could prevent the judicial system from effectively enforcing probation conditions.

In addition, the *Rehberg* Court extended immunity to police officer witnesses in part because (1) if police officers, who "testify with some frequency," were not given immunity, their "energy and attention would be diverted from the pressing duty of enforcing the criminal law;" and (2)  "a police officer witness' potential liability, if conditioned on the exoneration of the accused, could influence decisions on appeal and collateral relief."  *Id*. at 368–69 (internal citations omitted).  If probation officers were not granted absolute immunity for their testimony, I would have those same concerns.

For the foregoing reasons, I conclude that Elzia is entitled to absolute witness immunity regarding any claims based on her affidavit.  The Fourteenth Amendment Due Process Claim against her is therefore **dismissed with prejudice** under 28 U.S.C. § 1915A(b)(2).

To the extent Schlosser advances a Fourteenth Amendment claim against Mendoza, that claim is also not valid.  The complaint states that "[e]verything [Mendoza] makes reference to is based off the grossly deficient authorizations of information making" and that "everything she writes about is illegal because she never obtained proper consent."  Am. Compl., Doc. No. 12, at ¶ 50.  It is not clear from the complaint itself what information Mendoza disclosed or where she disclosed it.  A letter appended to the complaint, dated April 19, 2020 and addressed to the "Chief States Attorney," sheds light on those questions.  In that letter, Schlosser writes that

24

Mendoza violated various statutes, asserting "you are not allowed to put any patient identifying information on any VOP affidavit." *Id*. at 28.

Accordingly, I construe the due process claim against Mendoza as one arising from an affidavit Mendoza filed in connection with Schlosser's violation of probation proceeding. Because, as discussed, probation officers are entirely immune from claims based on such affidavits, that claim is **dismissed with prejudice** under 28 U.S.C. § 1915A(b)(2).

l.   42 C.F.R. Part 2 Claim

Schlosser also asserts a claim under 42 C.F.R. Part 2.  I construe that claim as one under 42 U.S.C. § 290dd–2, which is the statute under which the regulations were promulgated. *Delano v. Rendle*, 2015 WL 1506079, at *4 n.8 (N.D.N.Y. Mar. 31, 2015).  That statute generally prohibits the disclosure of  "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance use disorder education, prevention, training, treatment, rehabilitation, or research."  42 U.S.C. § 290dd–2.

The Second Circuit has not yet addressed the issue of whether 42 U.S.C. § 290dd–2 creates rights that are enforceable through section 1983.  Other courts that have considered the question have held that the provision does not create such individual entitlements.  *See Doe v. Broderick*, 225 F.3d 440, 447–48 (4th Cir. 2000) (holding that section 209dd–2 does not create individual rights that can be enforced via section 1983); *Ellison v. Cocke Cty.*, 63 F.3d 467, 471–72 (6th Cir. 1995) (same); *Delano v. Rendle*, 2015 WL 1506079, at *5 (N.D.N.Y. Mar. 31, 2015) (agreeing with the analysis in *Ellison* and *Broderick* and concluding that the plaintiff did not

have a right to enforce either section 290dd–2 or 42 C.F.R. Part 2 through a section 1983 claim).

In reaching that conclusion, the *Broderick* court explained:

> There is nothing in the text of section 290dd–2 to indicate that Congress had in mind the creation of individual rights.  For example, instead of providing patients with the right to maintain the privacy of their records, subsection (a) establishes a broad proscription against the disclosure of substance abuse treatment records maintained not only for rehabilitation but for education, training, and research. . . . Subsection (b) permits disclosure pursuant to a court order that balances "the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to *the treatment services*." . . . The language used in section 290dd–2 suggests that Congress was concerned primarily with fostering programs aimed at curtailing our nation's staggering substance abuse problems.  The primary beneficiary is the public. Ensuring the confidentiality of patient records encourages voluntary participation in such programs which, in turn, improves public health. . . . Legislative history, moreover, confirms that Congress enacted the section as part of an effort to combat the American public's drug abuse problem and that Congress intended to encourage individuals to seek treatment.

*Broderick*, 225 F.3d at 448–49.

I find the reasoning set forth in *Broderick* persuasive, and conclude that Schlosser's claim alleging violations of 42 C.F.R. Part 2, authorized under section 290dd–2, is not colorable.  The claim is **dismissed with prejudice** under 28 U.S.C. § 1915A(b)(1).

m.  42 U.S.C. Chapter 114 Claim

Schlosser also advances a claim under 42 U.S.C. Chapter 114.  I construe his claim as one under 42 U.S.C. § 10841, which is a section in Chapter 114 entitled "Restatement of Bill of Rights."  That section describes protections and services that should be afforded to mental health patients, and is the only provision that appears applicable.

Section 10841, however, creates no enforceable federal rights.  *See Mele v. Hill Health Ctr.*, 609 F. Supp. 2d 248, 255 (D. Conn. 2009) (concluding that the statute does not grant

26

plaintiffs a private right of action or enforceable federal right).  Accordingly, I must **dismiss with prejudice** Schlosser's 42 U.S.C. Chapter 114 claim under 28 U.S.C. § 1915A(b)(1).

>   n.   Conn. Gen. Stat. Ch. 899 Claim

Finally, Schlosser propounds a claim under Conn. Gen. Stat. Ch. 899.  Although Schlosser does not specify under which of the many provisions in Conn. Gen. Stat. Ch. 899 he is bringing suit, I construe his claim as one under Conn. Gen. Stat. § 52–146o (2012), which seems to be the only relevant provision.

That provision prohibits the disclosure of certain health information "by a physician or surgeon" without a release.  Conn. Gen. Stat. § 52–146o (2012).  Because none of the named defendants are health care providers, none of the defendants could have violated the statute.  Accordingly, that claim is **dismissed without prejudice** to filing in state court under 28 U.S.C. § 1915A(b)(1).

## CONCLUSION

For the foregoing reasons, all claims against the judges, prosecutors, public defenders, and CSSD Adult Probation are **DISMISSED** with prejudice.  The claims relating to his mental health treatment and false imprisonment are also **DISMISSED** with prejudice, as are the claims brought under 42 C.F.R. Part 2 and 42 U.S.C. Chapter 114.  The Fourth and Fourteenth Amendment claims based on the inclusion of Schlosser's health information in the violation of probation affidavits are likewise **DISMISSED** with prejudice.

The Fifth and Sixth Amendment claims are **DISMISSED** without prejudice to bringing a separate action against appropriate defendants.  The challenge to the length of his sentence is also **DISMISSED** without prejudice to pursuit of those claims in a state habeas corpus petition.

Schlosser's claims relating to the strip search and to the crushed medication are **DISMISSED** without prejudice to Schlosser pursuing the claims in a separate action.  Finally, Schlosser's claim under Conn. Gen. Stat. Ch. 899 is **DISMISSED** without prejudice to filing in state court.

Because all claims are dismissed, Schlosser's motions for appointment of counsel [**Doc. No. 4**] and injunctive relief [**Doc. No. 11**] are **DENIED**.

The Clerk shall enter judgment and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 15th day of July 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

28